John J. Revens, et al. }
vs. } Eq. No. 8209
May Revens Berth }

### May 15, 1928.

BAKER, J. Final hearing. This bill is brought by two brothers against their sister to set aside and declare void a certain conveyance of real estate in the City of Providence, dated April 6, 1926, and made by the father of the parties to the respondent. The grounds for relief, as set out in the bill, are that the mind of the grantor was so impaired as to render him unfit for the transaction of business and incapable of making a valid deed at the time of said conveyance, and also that said conveyance was obtained through the exercise by the respondent of undue influence upon him. The respondent denies these charges and advances various reasons as to why the conveyance in question should have been made.

The testimony produced shows briefly these facts:

John Revens, the father of the parties herein, died in a tragic manner September 22, 1926. At that time he was well into his 85th year. He owned several houses adjacent to each other in the City of Providence, in one of which he lived, renting the others. His wife had died in the latter part of the year 1923, and since that date he had lived alone with his daughter, the respondent. In 1916 his two brothers had died, leaving fairly substantial estates which came into the possession of Mr. Revens as heir-at-law. These aggregated apparently well over $20,000, a considerable portion of which were bank deposits. A substantial part of this money remained in Mr. Revens' possession during the last few years of his life. In September, 1924, he executed a power of attorney to his daughter, the respondent, and she made frequent use of the authority given by this instrument in withdrawing funds from various banks. July 10, 1925, he conveyed to the respondent the house in which they were living. Statements appear in various parts of the testimony that this was done for the purpose of providing a home for his daughter after his death. This conveyance the complainants are not attacking. Thereafter, on April 6, 1926, about six months before his death and a short time after he had passed his 84th birthday, he conveyed the remainder of his real estate and the houses thereon to the respondent. This is the deed which the complainants are seeking to have set aside.

It is undisputed that for at least five or six years prior to his death there was in existence a will of Mr. Revens which in substance distributed his estate in thirds to the complainants and to the respondent.

Mr. Revens up to 1914 was in the liquor business. He was evidently, when in his prime, a man of considerable force and ability, although of not much education. He was, however, interested in history, current events and particularly matters dealing with the

Irish race. He desired his children to be well educated. His daughter, the respondent, appreciated this and is obviously in many ways superior to her brothers, the complainants. They were not wise enough to take advantage of the father's generosity in this connection. It is clear that the marriage of the complainant, John J. Revens was not very satisfactory to the family, although no open breach of any kind then occurred. The other complainant, Emmet Revens, early in life acquired unfortunate habits and has never amounted to much. John Revens brought up from early infancy his grandchild Rose, the daughter of the complainant John J. Revens, and was extremely fond of her. It is also clear that he cared for and was interested in the young son of Emmet Revens.

The first question to be considered relates to the condition of Mr. Revens' mind at or about the time the second conveyance was made. The evidence on this issue is presented by members of his family, neighbors, friends who visited him, his attorney, and doctors. While this testimony is in some conflict, on the whole the witnesses do not differ greatly. It seems to show that soon after his wife's death in 1923, he began to change. Nearly all the witnesses are agreed on this fact. He was somewhat infirm, having hurt his leg and requiring a cane when walking. His eyes also bothered him and he was afflicted with some form of heart and kidney trouble. By the years 1925 and 1926 it is quite evident that he was somewhat feeble, that he rambled to some extent in his talk and was childish and forgetful. He had difficulty in recognizing people whom he had known for years. He was, however, interested in current matters and could carry on an interesting and intelligent conversation. As is not uncommon with older people, his memory of events of the past was clearer than that relating to recent matters. The testimony of Dr. Gray,

his physician, may be mentioned in this connection.

The respondent placed on the stand a group of friends who, while obviously interested in her, nevertheless gave very credible testimony concerning the mental condition of Mr. Revens during the last year or two of his life. The testimony of the attorney who took his acknowledgment on the deed involved herein was also before the Court.

Considering the whole mass of evidence on this point, the Court is satisfied that, while it shows that Mr. Revens was suffering both physically and mentally from his advanced years, nevertheless he was able to transact business, and that his mind was not so impaired that he could not understand what he was doing. On this phase of the case, therefore, the Court does not find that the complainants have sustained the burden of proof.

The difficult question presented for decision, in the opinion of the Court, relates to the charge of undue influence. In determining this issue it is necessary to look at all the circumstances and situations surrounding the parties at and before the time the deed in question was executed, and to consider the effect of the testimony presented as a whole rather than any particular part in detail. Further, such an allegation has to be determined largely from the inference and deductions to be drawn from the evidence, and from the reasonable probabilities as shown by the facts of each particular case. It is impossible in such a situation to base a decision on a few isolated facts or points.

The Court is reasonably satisfied in its mind that Mr. Revens, when he consulted his attorney in company with the respondent in relation to the drawing of the deed in question, told him substantially what the attorney has related on the witness stand. The question presented is whether in so discussing the matter with his attorney he

was presenting his own uninfluenced, unbiased judgment and desire, or whether he was making use of ideas which had been put into his mind by another.

Of course it is well settled that affection for his daughter or mere acts of kindness on her part can not alone constitute undue influence. The claim is advanced by the respondent that the deed in question was made and the will was destroyed because Mr. Revens had become disgusted with the actions of his two sons, the complainants. In relation to Emmet in particular it is urged, that in the latter part of the year 1925 his condition had become such that it was necessary to eject him and his wife from the premises where they had been living next to the father's house, and in respect to the complainant John, that a quarrel had ensued and charges had been made regarding the administration of the estates of Mr. Revens' brothers.

No one can dispute that Emmet in his anxiety to obtain funds from his father stooped many times to unworthy subterfuges. He himself frankly admits it. And it cannot be denied that the complainant John had on occasions argued with his father, and had not perhaps always been a dutiful son. But these facts do not necessarily in themselves present reasons why the respondent should obtain possession of her father's entire estate, unless it was his free desire that this be the case.

The testimony proves conclusively that the members of this family have been for years more or less hostile to each other. There can be no question but what the respondent did desire to obtain all of her father's estate. There appears in the evidence a statement in substance that she was a girl and should be taken care of. The fact that the respondent had ample opportunity to argue with and influence her father can not be disputed. She lived alone with him and looked out for

him from the date of her mother's death until he died. Respondent claims that she gave up a career in order to remain at home and assist her parents and that this was a consideration which influenced her father in making the conveyance in question. The Court finds it somewhat difficult, however, to understand just what career the respondent gave up. She was working at this time as clerk or stenographer in a broker's office and possibly may have been perfectly willing to return to her home to care for her parents.

The matter of the handling of the bank accounts, while of course, not directly involved in this case, is, nevertheless, of some interest as throwing light upon the feelings and intentions of the parties involved. After the power of attorney was given her in September, 1924, the respondent had complete access to these accounts. In fact, some of them were afterwards placed in her name. It is inconceivable that Mr. Revens required the large sums of money which were withdrawn some time prior to his death. His manner of living had not changed to that extent. The only reasonable inference is that by far the greater part of this personal property found its way into the respondent's hands, because the administrator of Mr. Revens' estate obtained nothing after his appointment.

The complainants urge that the execution of this power of attorney tends to show the control of the respondent over Mr. Revens and the need, owing to his condition, for some such document. The respondent claims that its execution was merely for convenience because it was difficult for Mr. Revens to go down-town to the banks on account of his advanced age. There is testimony in the case that Mr. Revens did not consult his attorney about his personal estate in any way. Either or both inferences may be drawn from the facts. The complainants, also, produced witnesses who testified to state-

ments made by Mr. Revens that he had no peace and that the respondent kept after him to get the conveyance of the remainder of the real estate. There can be no question but what the respondent knew of the contents of her father's will. She, however, denies that she exercised any influence over him in connection with the making of the conveyance in dispute.

In regard to the two sons, the Court can well understand how they might have been a disappointment to Mr. Revens. The Court does not doubt that testimony. But even if they were a disappointment, apparently the father assisted them both financially many times and up to within a few years of his death was more or less friendly with both, and particularly with Emmet. It is rather clear, however, that after the mother's death, both the sons were not very welcome at the house where the respondent and her father lived.

It is a little difficult for the Court to understand why, if the father had any very great feeling against the sons, he did not convey his entire property by the first deed in July, 1925, rather than wait until April, 1926. The respondent urges that certain things hereinbefore referred to happened subsequent to the execution of the first deed, but the Court can not find from the evidence, even assuming this to be so, that these so influenced the father as to cause him to entirely cut off his two sons from participating in any way in his estate.

Having in mind Mr. Revens' advanced age, the situation of the parties, the desire of the respondent to obtain possession of her father's estate and the ample opportunity she had to influence him, the Court is of the opinion, after careful consideration, that his act in having prepared and executing the deed of April 6, 1926, was not his own free and voluntary, uninfluenced act, but was brought about through the undue influence of the respondent. The

Court finds that the complainants have proved this portion of their case by a fair preponderance of the evidence.

The Court believes the issues of fact as filed have been answered herein.

The complainants are entitled to the relief prayed for in their bill.

For complainants: Cooney & Cooney.
For respondent: John L. Curran.